HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARY L. EDWARDS,

        Plaintiff,

        v.

TACOMA PUBLIC SCHOOLS AND ALL
OTHER UNKNOWN PARTIES,

        Defendants.

Case No. C04-5656 RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Defendant's Renewed Motion to Dismiss Claims for Failure to Comply with Statutory Prerequisites [Dkt. #35] and Motion for Summary Judgment [Dkt. #36].

Having considered the entirety of the records and file herein, the Court rules as follows:

Defendant Tacoma School District ("District" or "TSD") moves to dismiss plaintiff Mary Edwards' amended complaint for the failure to file suit within the statutorily mandated 90 days of receipt of notice of the right to sue and for the failure to follow Washington's pre-claim notice statute, RCW 4.96.020. The District seeks summary judgment as to plaintiff's claims which are unaffected by statutory prerequisites, and, alternatively, seeks summary judgment on those claims it also argues are procedurally defective.

**Facts and Procedural History**

The relevant facts are not in dispute. To the extent that there is a factual dispute, the Court will address the merits of the disagreements in the substantive discussion to follow. Plaintiff has been a teacher in Tacoma

1  Public Schools since 1979.  She currently teaches second grade at Jennie Reed Elementary School.  Ms.

2  Edwards suffers from sarcoidosis, a lung condition which affects her ability to breathe and therefore limits the

3  amount of physical activity she can engage in.  She requires supplemental oxygen which she either accesses

4  by way of a device she carries on her person, or through a separate tank.  Ms. Edwards notified the District

5  of her condition in 1989.  <u>See Decl. of Mary Edwards, Dkt. #40 ("Edwards Decl."); Decl. of Marion Leach,</u>

6  <u>Dkt. #38 ("Leach Decl.").</u>

7       In November, 1999, plaintiff was hospitalized due to complications arising from her condition.  She

8  requested and was placed on extended medical leave.  She remained on leave throughout the 1999/2000 school

9  year.  Prior to the beginning of the 2000/2001 school year she informed the District that she would not be

10  returning to teach until December, 2000, and provided medical documentation from her physician (Dr. Ralph)

11  to that effect.  In early December, 2000, Ms. Edwards informed the District that she would like to return to

12  work part-time, teaching only in the morning.  <u>Leach Decl., Exh. 4, (Letter dated Dec. 12, 2000 from Mary</u>

13  <u>Edwards to Marion Leach, ADA Officer)</u>.  Plaintiff proposed a job share wherein she would teach her first

14  grade class in the morning and the current substitute teacher would teach in the afternoon.  <u>Id</u>., <u>Exh. 5</u>.  She

15  also requested a full-time assistant.  Dr. Ralph sent a letter to the District indicating that he "believe[d] she

16  could teach to a full capacity class if she had a full-time assistant."  <u>Id</u>., <u>Exh. 6</u>.

17       Between December, 2000 and April, 2001 Ms. Edwards, her doctors, and the District communicated

18  and discussed what accommodations would be provided, including a full-time assistant.  <u>Edwards Decl.; Leach</u>

19  <u>Decl</u>.  Two of plaintiff's physicians, Dr. Weled and Dr. Chan, indicated that plaintiff should avoid extensive

20  exercise and should avoid activities that would preclude her from using oxygen, but they did not indicate that

21  she needed a full-time assistant to perform her job.  <u>Leach Decl., Exhs. 17 and 19</u>.  The District also

22  commissioned a consultant to perform a functional job analysis of an elementary school teacher.  On April 25,

23  2001 Ms. Leach sent plaintiff a letter outlining the possible accommodations the District was willing to

24  provide, and requesting that Ms. Edwards contact her to discuss the District's proposal.  The possible

25  accommodations offered by the District did not include a full-time assistant.  <u>Leach Decl., Exh. 21</u>.  In response

26  to the letter, Ms. Edwards filed a grievance with the District through her union, the Tacoma Education

27  Association.  The grievance was based on the failure of the District to accommodate plaintiff's disability by

28  declining to provide a full-time assistant.  <u>Id</u>., <u>Exh. 23</u>.  <u>Edwards Decl., para. 12</u>.  As per the union contract,

1   the grievance went through an informal process and was denied.  The dispute was then heard by a third party

2   hearings officer, and on June 22, 2001, the hearings officer found in favor of the District.  Leach Decl., Exh.

3   25.

4          On July 24, 2001 plaintiff filed a complaint with the Washington State Human Rights Commission

5   alleging that the District discriminated against her by failing to accommodate plaintiff's disability by declining

6   to provide a full-time assistant.[1]  Leach Decl., Exh. 26.  The complaint was shared with the EEOC.  On

7   November 25, 2002 the Human Rights Commission issued a Finding of "No Reasonable Cause" concluding

8   that there was insufficient evidence to support a finding that plaintiff had been discriminated against.  Id.,

9   Exh. 28.  On September 17, 2003 the EEOC dismissed the charge before it based on the findings of the Human

10  Rights Commission and gave plaintiff notice of her rights to sue.  Id., Exh. 29.

11         Plaintiff initially filed a lawsuit against the District on December 15, 2003.  *See Mary L. Edwards vs.*

12  *Tacoma Public Schools, et. al.,* No. C03-5696RJB.  That complaint was dismissed without prejudice by Judge

13  Bryan on August 13, 2004 for insufficiency of service of process.  C03-5696RJB, Dkt. #12.  Plaintiff then

14  re-filed the action and it was assigned to this Court.  After defendant filed its initial Motion to Dismiss on

15  January 6, 2005, plaintiff requested and was granted the opportunity to file an amended complaint.  Dkt. #25.

16  Plaintiff's Amended Complaint contains five causes of action: First, Disability Discrimination in Violation of

17  the Americans With Disabilities Act, 42 U.S.C. § 12112 et. seq. ("ADA"); Second, Disability Discrimination

18  in Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Third, Violation of the Washington

19  Law Against Discrimination, RCW 49.60 et. seq. ("WLAD"); Fourth, Racial Discrimination in Violation of

20  42 U.S.C. § 1981; and, Fifth, Retaliation in Violation of 42 U.S.C. § 1981, of 42 U.S.C. § 2000e, et. seq.

21  ("Title VII"), of the ADA, and of Section 504 of the Rehabilitation Act.  Dkt. #27.

22  **Defendants Renewed Motion to Dismiss**

23         The District moves to dismiss Ms. Edwards' discrimination claims under the ADA because such claims

24  were not filed within 90 days of receiving notice from the EEOC of the right to sue.  The District moves to

25  dismiss plaintiff's claims under the WLAD because she failed to serve the District with a statutory claim for

26  damages pursuant to RCW 4.96.010 and .020 prior to commencement of this lawsuit.  The District also moves

27  _____

28         [1]Ms. Edwards also claims to have filed a complaint with the Human Rights Commission on May 1, 2001.  However, the District has no record of being served with the complaint and Ms. Edwards has not presented any evidence of a May 1, 2001 filing.

1   to dismiss plaintiff's retaliation claims under the ADA and Title VII because retaliation was not included in the

2   EEOC complaint and this lawsuit was not commenced within 90 days of receiving notice from the EEOC of

3   the right to sue.

4       The ADA incorporates the procedural requirements of Title VII.  42 U.S.C. § 12117(a); *Santa*

5   *Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).  Claimants must exhaust their administrative

6   remedies before filing a lawsuit in this Court by filing a complaint with the EEOC or appropriate state

7   agency.  42 U.S.C. § 2000e - 5(b).  After the EEOC has completed their investigation and has issued

8   notice of the right to sue, the complainant has 90 days to file a complaint in this Court.  42 U.S.C. § 2000e

9   - 5(f)(1).  The 90-day filing requirement "constitutes a statute of limitations," *Scholar v. Pacific Bell*, 963

10  F.2d 264, 267 (9th Cir. 1992), and the failure to file suit within 90 days results in the action being time-

11  barred.  *Nelmida v. Shelly Eurocars, Inc.,*, 112 F.3d 380, 384 (9th Cir. 1997).  The filing of a lawsuit later

12  dismissed does not toll the 90-day filing requirement.  *O'Donnell v. Vencor, Inc.,* ___ F.3d ___, 2006 WL

13  286 4421 (9th Cir. No. 05-15687, October 10, 2006); *Chico-Velez v. Roche Products, Inc.*, 139 F.3d 56,

14  59 (1st Cir. 1989); *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985) (court stated that a subsequent

15  lawsuit under Title VII would be time barred after first lawsuit was dismissed without prejudice for failure

16  to serve defendant).  The pre-claim notice requirement contained in RCW 4.96.020 applies to school

17  districts and the failure to strictly follow it results in dismissal of the action.  *Medina v. Public Utility Dist.*

18  *No. 1*, 147 Wn.2d 303 (2002); *Pirtle v. Spokane Public School Dist. No. 81*, 83 Wn. App. 304 (1996).

19      Plaintiff argues in opposition to the motion: (1) that the discrimination is ongoing and the

20  continuing violations doctrine equitably tolls the 90-day filing requirement; (2) that she filed a damages

21  claim, and; (3) that the action filed on December 15, 2003 and subsequently dismissed without prejudice by

22  Judge Bryan tolls the 90-day filing requirement.

23      Plaintiff's arguments are unavailing.  The continuing violations doctrine is addressed to the issue of

24  whether or not a claimant has timely filed a charge within the statutory 180-day (EEOC) or 300-day (state

25  agency) period from the last discrete act of discrimination, or during an ongoing claim of a hostile work

26  environment.  The doctrine does not apply to the 90-day limitation period which runs from the date the

27  EEOC or state agency issues its "right to sue" letter.  In any event, the Supreme Court, in *National R.R.*

28  *Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) reversed the Ninth Circuit's formulation and application

1    of the "continuing violations doctrine."  Under *Morgan*, in order for the alleged discrimination to be

2    actionable, a claimant must file a claim with the EEOC within 180 days (or 300 days if filing with a state

3    agency) of a discrete act of discrimination.  *See* 536 U.S. at 114.  To the extent that the continuing

4    violations doctrine may survive *Morgan*, it does not apply to Ms. Edwards' failure to file her lawsuit in this

5    Court within 90 days of receiving notice of the right to sue.

6        Plaintiff next argues that she complied with the pre-claim filing procedures of RCW 4.96.020 by

7    filing a Standard Tort Claim Form pursuant to RCW 4.92 with the State of Washington on August 11,

8    2005.  Decl. of Hector Steele Rojas, Exh. A, Exh. B, Dkt. #39.  Plaintiff is mistaken.  The pre-claims filing

9    procedures must be strictly followed, and filing a Tort Claim Form with the State after the lawsuit was filed

10   does not conform with RCW 4.96.020's requirement that a notice of claim must be filed with the agent of

11   the local governmental agency prior to commencement of the action.

12       Finally, plaintiff argues that by filing a lawsuit on December 15, 2003 she has tolled the 90-day

13   filing requirement.  Again plaintiff is mistaken.  The filing of a lawsuit within the 90-day period which is

14   subsequently dismissed for insufficiency of service of process does not toll the 90-day filing requirement.

15   *O'Donnell v. Vencor, Inc., supra*; *Chico-Velez v. Roche Products, Inc.*, *supra*; *Wei v. State of Hawaii*,

16   *supra*.

17       For the foregoing reasons, Defendant's Renewed Motion to Dismiss shall be granted and plaintiff's

18   causes of action under the ADA, Title VII and the WLAD shall be dismissed.

19   **Defendant's Motion for Summary Judgment**[2]

20       Summary judgment is appropriate when, viewing the facts in the light most favorable to the

21   nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a

22   matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the

23   non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on

24   file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

25

26   [2]The thrust of the defendant's motion is directed at plaintiff's claims under 42 U.S.C. § 1981 and Section 504 of the
     Rehabilitation Act.  Defendant also seeks summary judgment on plaintiff's ADA, Title VII and WLAD claims in the event

27   defendant's motion to dismiss is not granted.  Because this Court by way of this Order has granted the District's motion to dismiss,
     the Court will not address the merits of the defendant's summary judgment motion as to plaintiff's claims under the ADA, Title

28   VII and the WLAD.  However, in deciding defendant's summary judgment motion as to 42 U.S.C. § 1981 and Section 504 of the
     Rehabilitation Act, the Court has by necessity reviewed the factual basis for the dismissed claims and is convinced that the claims
     under the ADA, Title VII and the WLAD are also ripe for summary judgment.

324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

The District moves for summary judgment on plaintiff's second cause of action for discrimination under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, fourth cause of action for racial discrimination under 42 U.S.C. § 1981, and fifth cause of action for retaliation under both the Rehabilitation Act and 42 U.S.C. § 1981. Because plaintiff has offered no argument in opposition to defendant's motion as it pertains to the 42 U.S.C. § 1981 claims, the Court will address this aspect of the motion for summary judgment first.

In order to state a claim under 42 U.S.C. § 1981, plaintiff must allege that her "rights were violated as a result of [the District's] 'policy or custom.'" *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996). The requisite "policy or custom" is the same official "policy or custom" as required for suits against municipalities as set forth in *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978). *Id.* at 1205. Here, it is undisputed that plaintiff did not allege in her complaint that defendant discriminated against her in conformity with an official policy or custom of the District. Therefore, her fourth cause of action and her fifth cause of action to the extent it relies upon 42 U.S.C. § 1981, must be dismissed. Defendant's motion for summary judgment on plaintiff's 42 U.S.C. § 1981 claims shall be granted.

Remaining before the Court are plaintiff's claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Rehabilitation Act makes it unlawful to discriminate against a qualified individual with a disability in any program or activity which receives federal funds. Included in the prohibition against discrimination is the requirement that reasonable accommodations be made for the disabled person. Claims under the Rehabilitation Act are analyzed the same way as are claims under the ADA. *Coons v. Sec'y of the U.S. Dept of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

The District does not dispute that plaintiff is disabled or that she can perform the essential functions

of her job with or without accommodations.  The issue here is whether plaintiff's required accommodation of a full-time assistant is "reasonable on its face, i.e., ordinarily or in the run of cases."  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002).  "An 'employer is not obligated to provide an employee the accommodation [she] requests or prefers, the employer need only provide some reasonable accommodation.'" *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) *quoting EEOC v. Yellow Freight Sys. Inc.*, 253 F.3d 943, 951 (7th Cir. 2001).

Since the 2001/2002 school year the District has accommodated Ms. Edwards' disability by providing her a radio system which allows her to contact the front office, providing her a motorized scooter to use in her classroom and the building, providing an overhead projector, providing a disabled parking spot, and providing assistance with physical tasks.  See Leach Decl. Exh. 30.  Ms. Edwards continues to teach at Jennie Reed Elementary with these accommodations, and without a full-time assistant.

The District's reasons for declining to provide Ms. Edwards with a full-time assistant were that a full-time assistant was not necessary to accommodate plaintiff's disability and that the tasks Ms. Edwards wanted the assistant to perform were essential functions of a teacher.  The District hired two consultants, SCA Pacific and Bernard Consultations, PLLC to do an analysis of the essential functions of Ms. Edwards' job and in the case of Bernard Consultations, PLLC to advise the District what other accommodations might be necessary.  Leach Dec., Exhs. 20 and 30; Leach Supp. Decl., Exh. #3, Dkt. #46.  The essential job functions of an elementary school teacher are:

> Develops lesson plans and manages the learning experience, curricular and extracurricular to ensure the needs of the group and individual student are met; Evaluates student performance and provides guidance which will promote the student's welfare; educational development, and citizenship; Provides the maximum learning opportunities for each student; Responsible for classroom management and supervision of students; Maintaining a learning environment in the classroom.  (90%) Tasks: Writes assignments, writes lesson plans according to curriculum, grades papers and tests.  Escorts student to various places in the school for classes or related activities.  Interacts with students on a one on one basis to ensure adequate learning.  Implements the learning experience by assigning or carrying out lesson plans.  May work with students on an individual or group basis to clarify and establish progress in completing the assigned lesson.

Leach Decl., Exh. 20 (Report of SCA Pacific).  Ms. Edwards does not dispute that these are her essential

ORDER
Page - 7

1  job functions.[3]  Decl. of Phillip D. Noble, Exh. B, Dkt. #37, Deposition of Mary Edwards, pp. 114-118.

2  The duties of a full-time assistant as envisioned by Ms. Edwards would be to circulate in the classroom

3  observing student learning and social behaviors, assist with the development/grade level appropriate and

4  necessary instruction activities, demonstrating techniques, running learning centers in the reading program,

5  and working at student visual and seating level in interactive reading and writing activities.  Leach Decl.,

6  Exh. 16, (Edwards' written description of the duties of full-time assistant).

7       The Court agrees that the duties envisioned by Ms. Edwards to be performed by the full-time

8  assistant are essential job functions of the teacher.  Because "[t]he ADA [and thus the Rehabilitation Act]

9  does not require an employer to exempt an employee from performing essential functions or to reallocate

10  essential functions to other employees [,]" *Dark v. Curry County*, 451 F.3d 1071, 1089 (9th Cir. 2006), Ms.

11  Edwards has not carried her burden to show that the accommodation of a full-time assistant is "reasonable

12  on its face, i.e. ordinarily or in the run of cases."  *US Airways, Inc. v. Barnett*, *supra*.  Therefore,

13  Defendant's Motion for Summary Judgment as to plaintiff's second cause of action shall be granted.

14       Finally, Ms. Edwards alleges that she was retaliated against for filing her complaints with the

15  defendant and the Human Rights Commission.[4]  Dkt. #27.  In order to establish a claim of retaliation

16  plaintiff must show (1) she engaged in protected activity, (2) she was subjected to an adverse employment

17  action, and (3) there is a causal connection between the two.  *Manatt v. Bank of America*, 339 F.3d 792,

18  800 (9th Cir. 2003).  The Supreme Court has recently defined an adverse employment action in a Title VII

19  retaliation case as "retaliation that produces an injury or harm."  *Burlington Northern R.R. Co. v. White*,

20  126 S. Ct. 2405, 2414 (2006).  The seriousness of the harm must be such "that a reasonable employee

21  would have found the challenged action materially adverse."  *Id.* at 2415.  Materiality is significant.  The

22  anti-retaliation provisions of federal anti-discrimination statutes are designed to prevent employees from

---

24     [3]Ms. Edwards does dispute some of the functions outlined in the Bernard Report such as supervising students in the lunch line, getting breakfast supplies, supervising volunteers, and taking down the chairs before class; however, Bernard removed the

25  objectionable functions in a revised report.  Leach Supp. Decl., Exh. 3.  Plaintiff also filed a complaint with the Human Rights Commission over the Bernard Report.  That complaint was also dismissed with a Finding of "No Reasonable Cause."  Leach

26  Decl., Exh. 4, Exh. 36.

27     [4]Plaintiff's Amended Complaint is unclear.  Under the heading **FIFTH CAUSE OF ACTION** (Retaliatory Discrimination) she includes Section 504 of the Rehabilitation Act.  However, in paragraph 48 which sets forth the factual basis for the claim, she only refers to RCW 49.60, 42 U.S.C. § 1981, and 42 U.S.C. § 2000e.  However, in her Response to Defendant's

28  Motion for Summary Judgment, Dkt. #40, p. 9, she references the Rehabilitation Act.  Therefore, this Court will address the merits of the claim.

1   being deterred from complaining about discrimination to their employers, rights organizations, or the

2   Courts. *Id.* Only significant harms are actionable. *Id.* Once the plaintiff has established a *prima facie*

3   case, the burden shifts to the employer to offer legitimate reasons for their actions. If the employer offers a

4   legitimate reason for the challenged action, the burden shifts back to the plaintiff to demonstrate that a

5   triable issue of fact exists as to whether the legitimate reasons offered were pre-textual. *See Brooks v. City*

6   *of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (Title VII retaliation claim).

7          Here, Ms. Edwards cannot rely on the September, 2001 removal of the temporary assistant helping

8   her as evidence of retaliation. Ms. Edwards filed a grievance in April, 2001 based on the District's

9   decision to not provide her with a full-time assistant. That grievance was resolved in the District's favor.

10  She thereafter filed a complaint with the Human Rights Commission on July 24, 2001. She returned to

11  teach at the beginning of the 2001/2002 school year and had an assistant helping her. The District asserts,

12  and plaintiff offers no contrary evidence, that it customarily provides temporary help to a returning teacher

13  who has been on extended leave. In an effort to settle Ms. Edwards' complaint, the District offered to

14  provide the assistant for the full school year. In late September, 2001, Ms. Edwards rejected the District's

15  offer. Leach Supp. Decl., Exh. 2 (memo from TEA to Ms. Edwards). As a result of plaintiff's rejection of

16  the offer, the District reassigned the assistant. Thus, Ms. Edwards did not suffer a materially adverse

17  employment action when the District reassigned the assistant who was helping her because she was merely

18  returned to the position she was in when she grieved and when she filed her complaint. A return to the

19  status quo is not the type of harm or injury that is "likely to deter [employees] from complaining" about

20  discrimination to their employers, rights organizations, or the courts. *Burlington Northern R.R. Co.*, 126

21  S. Ct. at 2415.

22         Likewise, Ms. Edwards cannot argue that a memo purportedly sent to staff at Jennie Reed in

23  October, 2001 by the principal detailing assignments for assistants that did not include an assistant assigned

24  to Ms. Edwards is evidence of retaliation. First, there is no evidence that the memo was ever circulated.

25  Ms. Edwards has not produced a copy and the District indicates it cannot locate one. Second, and more

26  importantly, the school principal was not responsible for determining what accommodations would be

27  provided. That responsibility belonged to Marion Leach, the District's ADA Officer. Leach Decl., para. 2.

28  And, by the time the alleged memo was circulated, Ms. Leach had already determined, and Ms. Edwards

1    had been informed, that a full-time assistant would not be provided.  Furthermore, the remand of Ms.

2    Edwards' temporary assistant was not a harm that would deter a reasonable employee from filing a

3    complaint, as it did not deter Ms. Edwards from filing a subsequent complaint with the Human Rights

4    Commission on October 21, 2002.  Leach Decl., Exh. 34.  Therefore, the District's Motion for Summary

5    Judgment on plaintiff's claim of retaliation under the Rehabilitation Act and contained in her fifth cause of

6    action shall be granted.  It is hereby

7           **ORDERED** that Defendant's Renewed Motion to Dismiss Claims for Failure to Comply with

8    Statutory Prerequisites [Dkt. #35] is **GRANTED.**  It is further

9           **ORDERED** that Defendant's Motion for Summary Judgment [Dkt. #36] is **GRANTED**.  This

10   case is **DISMISSED**.

11          The Clerk shall send uncertified copies of this order to all counsel of record, and to any party

12   appearing pro se.

13          Dated this 20th day of October, 2006.

15          _____
16          RONALD B. LEIGHTON
            UNITED STATES DISTRICT JUDGE